**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 41 MAP 2016 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court dated 7/17/15 at No. 1693 MDA |
| v. | : | 2014 affirming the Order of the Dauphin |
| | : | County Court of Common Pleas dated |
| | : | 10/1/14 at No. CP-22-CR-0003601- |
| DAVID EDWARD RICKER, | : | 2014 |
| | : | |
| Appellant | : | ARGUED: December 6, 2016 |

**CONCURRING STATEMENT**

**CHIEF JUSTICE SAYLOR**                    **FILED: September 28, 2017**

In this criminal case, appeal was allowed to consider whether the Commonwealth may satisfy its burden at a preliminary hearing through hearsay evidence alone, as well as whether a defendant has a state or federal constitutional right to confront witnesses against him in such proceedings. Presently, I conclude that the prosecution did not proceed, at Appellant's preliminary hearing, solely through hearsay. Furthermore, Appellant's contention that the Commonwealth's essential presentation rested exclusively upon hearsay is interwoven into his constitutional arguments. I also note that the Court is divided as to material considerations involved in assessing whether, or to what extent, an accused enjoys a constitutional right of confrontation at a preliminary hearing, and some of these considerations are not substantially addressed in the present briefing.

For these reasons, I have determined that this appeal does not present a suitable vehicle by which to resolve the questions presented and that it should be dismissed. Given the substantial significance of these issues, however, I have undertaken to explain my reasoning in greater detail below and to specify some of the considerations which I believe should be developed in the advocacy in future cases or addressed via the rulemaking process to secure a resolution.

In June 2014, Appellant shot Pennsylvania State Trooper Michael Trotta while the officer was on Appellant's property investigating possible crimes. Trooper Trotta survived the encounter. Appellant was arrested and charged with attempted murder, assault of a law enforcement officer, and aggravated assault.

At the preliminary hearing before a magisterial district judge (the "MDJ"), the Commonwealth presented live testimony from an investigating officer, Trooper Douglas A. Kelley, who attested that he observed Trooper Trotta's gunshot wounds and participated in a search of Appellant's residence, where officers found plastic bags and jars containing marijuana, as well as eighty firearms. Additionally, Trooper Kelley indicated that he saw an AK-47 assault rifle, a pistol, and spent cartridge casings, in or near the garage area of Appellant's residence. He further explained that Appellant had also been shot in the confrontation and that the trooper interviewed him in the hospital. According to the witness, Appellant said that he was near his garage holding an AK-47 rifle when he was shot and commented that he did not understand why Trooper Trotta did not leave his property and secure a warrant.

During Trooper Kelley's testimony, the prosecution played an audiotape recording of his interview with Trooper Trotta, in which the latter attested to the following. On June 1, 2014, Trooper Trotta received a radio call to respond to a disturbance on Green Hill Road in West Hanover Township. He arrived to find a

mailbox had been impacted by a vehicle, and witnesses identified Appellant as the driver. Trooper Trotta proceeded to Appellant's property, where he first encountered Appellant's wife, then Appellant, who was belligerent, manifested signs of intoxication, hit his wife, and threatened the officer both verbally and by his conduct. While still sitting in his vehicle to protect himself from Appellant's dog, Trooper Trotta attempted to retrieve a Taser weapon, and he and Appellant fought over control of that implement.

The incident further escalated when Appellant produced a pistol and retreated to his garage. There, Trooper Trotta observed Appellant in possession of an assault rifle and believed that Appellant was positioning himself to engage another officer who had been summoned by Trooper Trotta to assist him. Accordingly, the trooper fired several shots at Appellant. Trooper Trotta then approached Appellant, who was prone in the garage, and was shot by Appellant.[1]

When the audiotape was played, Appellant's lawyer expressed a desire to examine Trooper Trotta, indicating that he found it to be unsatisfactory that the trooper's statement was introduced via hearsay with no opportunity afforded for cross-examination. Counsel acceded, however, to proceeding with the presentation of the Commonwealth's case, but he requested that another hearing be slated to permit him to question Trooper Trotta. The district attorney opposed the request on the following terms:

> We didn't just present hearsay because we also presented
> the statement of the Defendant in which he indicated that it
> was he and that he had a rifle in his hand.

---

[1] A more detailed recitation of the interview with Trooper Trotta appears in the Superior Court's opinion in the initial appeal. *See Commonwealth v. Ricker*, 120 A.3d 349, 351-52 (Pa. Super. 2015).

We also had the testimony regarding the recovery of the firearms, including the rifle and the cartridge cases from the garage, which are evidence of the discharge of that firearm from the garage.

The preliminary hearing is not for the purpose of discovering the Commonwealth's case or to get a crack at the witnesses. It is to determine whether or not this Defendant, who is at liberty on bail, should be held for trial.

N.T., July 10, 2014, at 43.

Appellant's lawyer further indicated that he had been led to believe that the Commonwealth would be presenting testimony from the trooper who had been called to assist Trooper Trotta, and counsel attempted to call that officer as a witness. The MDJ, however, did not permit this. In his concluding argument, Appellant's attorney argued that the use of force against Trooper Trotta was justified. Counsel stated:

This guy was in his home. He was retreating. He had a firearm by his side and a very ominous looking firearm, an AK-47 but it was never pointed. It was never discharged.

The question is, did he give up his right to live having that gun by his side. And I respectfully submit that he did not because Trotta intended to kill him.

And if that first shot didn't take him out, he shot him again. Ricker never shot back after that first shot was fired.

Ricker was in his house. Ricker never shot back after that second shot was fired and indeed a third shot was fired and he returned fire.

I believe it was justified because Trotta's action was excessive and deadly and unlawful and it just didn't need to happen.

Id. at 45. Counsel then reiterated his position that the hearing should be continued so that the officers could be questioned.

The MDJ concluded that the Commonwealth had met its burden and denied the request for a continuance. In this regard, the MDJ explained that the purpose of a preliminary hearing is not to establish guilt or innocence, but rather, to determine whether a *prima facie* case has been presented. *See generally Commonwealth v. McBride*, 528 Pa. 153, 160, 595 A.2d 589, 592 (1991) ("A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint.").

Subsequently, Appellant filed a petition for writ of *habeas corpus* requesting dismissal of the charges based on the Commonwealth's asserted failure to meet its burden of proof at the preliminary hearing. In the petition, Appellant again acknowledged that he had shot Trooper Trotta, but he claimed that he had been retreating and was justified in defending himself.

Appellant recognized that the function of a preliminary hearing is to protect the right against unlawful arrest and detention and that, therefore, the Commonwealth's burden is limited to presenting "evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense." Petition for Writ of *Habeas Corpus* at 4 (quoting *McBride*, 528 Pa. at 158, 595 A.2d at 591). He also acknowledged that hearsay evidence is admissible at a preliminary hearing and that the prosecution may rely upon hearsay to meet its burden of establishing a *prima facie* case. *See id.* Appellant contended, however, that hearsay *alone* will not suffice. *See id.* at 4-5 (citing *Commonwealth v. Jackson*, 849 A.2d 1254, 1257 (Pa. Super. 2004), and *Commonwealth v. Tyler*, 402 Pa. Super. 429, 433-34, 587 A.2d 326, 328 (1991)). Appellant relied substantially upon the plurality decision of this Court in *Commonwealth*

*ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990), explaining that, in that case, Justices found that the presentation of solely hearsay at a preliminary hearing violated state constitutional norms of confrontation and due process. *See id.* at 418-19, 581 A.2d at 175 (lead opinion) (relying primarily on the right of confrontation); *see also id.* at 419-21, 581 A.2d at 175-76 (Flaherty, J., concurring) (invoking due process). Furthermore, Appellant contended that, at his preliminary hearing, the Commonwealth had based its presentation concerning the material elements of the charged offenses exclusively upon hearsay.

Appellant's petition also addressed recent amendments to Rule of Criminal Procedure 542(E), which prescribe:

> Hearsay as provided by law shall be considered by the issuing authority in determining whether a *prima facie* case has been established. Hearsay evidence shall be sufficient to establish any element of an offense, including, but not limited to, those requiring proof of the ownership of, non-permitted use of, damage to, or value of property.

Pa.R.Crim.P. 542(E). While, again, Appellant conceded that the prosecution may rely upon some hearsay evidence at a preliminary hearing, to the degree that the rule sanctions reliance on hearsay alone, Appellant argued that its provisions offend constitutional requirements and render a preliminary hearing "a meaningless proceeding if the prosecution could simply call the affiant to the stand and read from his criminal complaint/affidavit of probable cause in order to get charges bound over for trial[.]" Petition for Writ of *Habeas Corpus* at 14.[2]

---

[2] Appellant also asserted that the MDJ abused his discretion by refusing the request for a continuance so that the troopers who were present during the shooting could be called by the defense as witnesses. On appeal, the Superior Court found this challenge to have been waived, *see Ricker*, 120 A.3d at 364; the question was not framed in Appellant's petition for allowance of appeal; and no further discussion of it is offered here.

The court of common pleas denied relief on the petition, reasoning that the Commonwealth simply did not rely exclusively on hearsay at the preliminary hearing. The court explained:

> At the preliminary hearing, Trooper Kelley testified that in his presence Appellant stated that he did not understand why the trooper did not leave and get a warrant. Appellant also stated that he was in his garage holding the AK-47 when he was shot. These admissions to Trooper Kelley were presented along with evidence regarding the seizure of eighty firearms from the home . . . and cartridge cases in the garage consistent with being discharged from an AK-47. Since the admissions and the products of the search were presented at the preliminary hearing, the Commonwealth did not rely solely on hearsay evidence as Appellant contends.

*Commonwealth v. Ricker*, No. CP-22-CR-0003601-2014, *slip op.* at 5 (Dauphin Cnty. Dec. 4, 2014). The court also highlighted Rule 542(E)'s express authorization of hearsay in preliminary hearings.

In terms of the right of confrontation, the county court related that this is a trial right. *See id.* at 6 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S. Ct. 989, 999 (1970) (plurality)). The function of a preliminary hearing, the court continued, is to determine whether a *prima facie* case has been made out against the accused. *See id.*

On Appellant's interlocutory appeal, the Superior Court affirmed. *See Ricker*, 120 A.3d at 351.[3] Initially, the panel considered whether the Commonwealth proffered

---

[3] The Superior Court determined that interlocutory appellate review was appropriate, since the issue presented was significant and capable of repetition and likely to evade review. *See id.* at 353-54 (citing *Commonwealth v. Hess*, 489 Pa. 580, 589, 414 A.2d 1043, 1047-48 (1980), for the proposition that exceptional circumstances may justify an interlocutory appeal from the denial of a pretrial petition for a writ of *habeas corpus*). *See generally* Tracy Bateman Farrell, *et al.*, 26A STANDARD PA. PRAC. 2D §132:576 (2017). This facet of the court's opinion is extraneous to the issue on which allocatur was granted, and I do not consider it here.

hearsay alone. While recognizing that the prosecution had offered some direct evidence, in the form of Trooper Kelley's testimony about his investigation, the panel nevertheless opined that none of this was sufficient to establish the elements of the crimes charged. *See id.* at 356. For this reason, in the panel's judgment, "hearsay alone was used to prove a *prima facie* case." *Id.* In this particular passage of its opinion, the panel implied that the Commonwealth must adduce enough direct evidence at a preliminary hearing to satisfy all elements of the charged offenses, and that, if hearsay is adduced, it may only be supplementary.[4]

In terms of Rule 542(E), the panel found that its provision requiring hearsay to be considered in assessing whether the Commonwealth has met its burden implicitly authorizes the use of hearsay alone at a preliminary hearing to satisfy the Commonwealth's entire burden of proof. *See id.* at 357 (reasoning that, if hearsay evidence can be sufficient to meet one or more elements of a crime, "it follows that, under the rule, *it is sufficient to meet all of the elements*" (emphasis added)).

Turning to the constitutional issue involving the right of confrontation, the panel offered an extensive discussion of the history of preliminary hearings in the Commonwealth, concluding with the assessment that Pennsylvania courts, historically, had found no constitutional right of confrontation extending to preliminary hearings. *See id.* at 358-60.

---

[4] This reasoning, of course, is in apparent conflict with Rule 542(E)'s prescription that "[h]earsay as provided by law *shall be considered* by the issuing authority *in determining whether a prima facie case has been established*." Pa.R.Crim.P. 542(E) (emphasis added). Moreover, it also contradicts the panel's apparent acceptance, otherwise in its opinion, that the Commonwealth may rely upon hearsay as a component of its *prima facie* case. *See, e.g., Ricker*, 120 A.3d at 357 ("If hearsay evidence *is sufficient to establish one or more elements of the crime*, it follows that, under the rule, it is sufficient to meet all of the elements." (emphasis added)).

The panel then considered the plurality decision in *Verbonitz*, 525 Pa. 413, 581 A.2d 172, in which a majority of Justices agreed that hearsay alone was insufficient to satisfy the Commonwealth's burden at a preliminary hearing. The lead Justices, the panel explained, concluded that a preliminary hearing is a critical stage of a criminal proceeding and, as such, the right of confrontation attaches. *See id.* at 361 (citing *Verbonitz*, 525 Pa. at 417-18, 581 A.2d at 174). The panel observed that the same Justices also construed the term "criminal prosecutions" in the Pennsylvania Constitution as encompassing preliminary hearings, thus implicating the right to confront witnesses. *See id.* (referring to *Verbonitz*, 525 Pa. at 419, 581 A.2d at 175). Additionally, the panel noted that Justice Flaherty, who supplied a fourth vote in support of the outcome, took the position that "fundamental due process requires that no adjudication be based solely on hearsay evidence." *Id.* (quoting *Verbonitz*, 525 Pa. at 419-21, 581 A.2d at 175-76 (Flaherty, J., concurring)).[5] Given the plurality status of *Verbonitz*, however, the panel declined to afford it controlling significance.

The panel also found the admission of hearsay at a preliminary hearing designed to assess *prima facie* proof to be in tension with dictum from the United States Supreme Court's decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S. Ct. 854 (1975). In that case, the Supreme Court initially explained that the federal Constitution does not require the full panoply of adversary safeguards attending trial at a preliminary hearing directed to determining probable cause for purposes of assessing the propriety of pretrial detention. *See id.* at 120, 95 S. Ct. at 866 ("[P]robable cause to believe the suspect has committed a crime . . . traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these

---

[5] Notably, the lead Justices in *Verbonitz* would appear also to have briefly invoked a due process rationale relative to the proposition that hearsay alone is insufficient. *See Verbonitz*, 525 Pa. at 417, 581 A.2d at 174.

informal modes of proof."). However, the *Gerstein* Court undertook to distinguish preliminary hearings serving broader purposes, to which higher standards of proof pertain. *See id.* at 122-23, 95 S. Ct. at 867-68 (citing *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970)). Ultimately, the Superior Court panel reasoned that "*Gerstein* . . . suggests but does not hold that a federal constitutional right to confront witnesses exists at the type of preliminary hearing used in Pennsylvania." *Ricker*, 120 A.3d at 362.

In the final passages of its opinion, the Superior Court panel accorded deference to Rule 542(E) and, concomitantly, to this Court as the rule-maker. The panel highlighted the absence of any binding precedent affording a defendant a right to cross-examine witnesses at a preliminary hearing. Moreover, the panel emphasized that, at the time of the ratification of the federal and early Pennsylvania Constitutions, the concept of "criminal prosecutions" did not encompass preliminary hearings, and there was no such right afforded at grand jury proceedings initiated subsequent to preliminary hearings. *Id.* at 363.

Finally, the panel recognized that there is some tension between Rule 542(C)'s conferral of a rule-based right to cross-examine and Rule 542(E)'s approval of hearsay. The panel commented, however, that Appellant had not explored this issue, and accordingly, it provided no further assessment. *See id.* at 364.

Appellant filed a petition for allowance of appeal, which this Court granted, framing the questions presented as follows:

> Whether the Pennsylvania Superior Court wrongly held, in a published opinion of first impression, that a defendant does not have a state or federal constitutional right to confront the witness against him at a preliminary hearing and that a *prima facie* case may be proven by the Commonwealth through hearsay evidence alone, which is what the trial and magisterial district courts concluded in Petitioner's case?

*Commonwealth v. Ricker*, 635 Pa. 255, 135 A.3d 175 (2016) (*per curiam*).

Presently, Appellant maintains that the Commonwealth inappropriately relied exclusively upon hearsay at the preliminary hearing. *See, e.g.*, Brief for Appellant at 24, 31-32 ("The only evidence adduced by the Commonwealth . . . going to the crimes' essential elements was the tape-recorded interview with Trooper Trotta, which was 'rank hearsay.'" (quoting *Verbonitz*, 525 Pa. at 417, 581 A.2d at 174) (quoting *UCBR v. Ceja*, 493 Pa. 588, 619, 427 A.2d 631, 647 (1981) (plurality))). It is Appellant's position that, to establish a *prima facie* case, each and every element of the crimes charged must be proven by the prosecution through legally competent evidence. *See id.* at 25. Appellant relies substantially upon *Verbonitz* for the proposition that hearsay alone simply cannot be employed to satisfy such burden. He also asserts that Rule of Criminal Procedure 542 should be read to preclude reliance upon only hearsay. *See id.* at 30; *see also* Brief for *Amicus Curiae* Defender Ass'n of Phila. at 7-11.

Appellant continues to accept that some hearsay evidence is admissible at preliminary hearings, but he posits that the presentation of certain witnesses is essential. He offers the following remarks to illustrate this position:

> Undersigned counsel does not contend that there should be an unrestricted right of confrontation at a preliminary hearing and hearsay evidence would continue to be admissible, particularly as to forensic evidence (e.g., lab reports, pathologist opinions, DNA results, BAC levels, etc.). However, as to crimes against persons (such as homicide, assault, robbery, sex crimes, etc.) as opposed to property-related offenses (theft, forgery, burglary, etc.), the alleged victim or victims must be in attendance and testify on both direct- and cross-examination in order for the evidence against a defendant to be tested.

Brief for Appellant at 32-33. As to his own preliminary hearing, Appellant claims that "the only way for the Commonwealth to prove a *prima facie* case of the essential

elements of the three crimes [charged] – absent hearsay evidence – would have been through the direct testimony of [Trooper Trotta] and the trooper who eyewitnessed the shootings." Brief for Appellant at 31.

In terms of the right of confrontation, Appellant recognizes that preliminary hearings in Pennsylvania are directed to addressing the lawfulness of pretrial custody for Fourth Amendment purposes. *See* Brief for Appellant at 22-23 (citing *McBride*, 528 Pa. at 158, 595 A.2d at 591). Nevertheless, his brief implies that the *prima facie* standard imposes a higher threshold than the probable-cause litmus serving as the constitutional floor relative to the salient Fourth Amendment concerns. In this regard, Appellant also references *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991 (1983) (plurality), for the proposition that the Commonwealth's burden is to "present admissible evidence at the preliminary hearing that would warrant a reasonable jury in finding each of the elements of the offense [beyond a reasonable doubt]." Brief for Appellant at 23 (citing, indirectly, to *Wojdak*). Appellant also highlights that, in *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970), the Supreme Court determined that a preliminary hearing afforded in Alabama comprised a critical stage of the proceedings for purposes of the Sixth Amendment right to counsel. *See id.* at 9-10, 90 S. Ct. at 2003.

Appellant supplements his presentation with an argument under the Due Process Clauses of the federal and state Constitutions. While he acknowledges that this exceeds the scope of the allocatur grant and what had been presented initially, Appellant indicates that the claim is closely related to his confrontation challenge and that the Commonwealth also wishes for this Court to review it presently.

In reply, the Commonwealth maintains that it did not rely solely on hearsay evidence at Appellant's preliminary hearing, since it offered Trooper Kelley's testimony that he observed Trooper Trotta's gunshot wounds, seized packaged marijuana and

weapons from Appellant's residence, and viewed spent cartridges in the vicinity of the location where the rifle was found. *See* Brief for Appellee at 7, 21. The Commonwealth also highlights Appellant's admission that he was in possession of an AK-47 rifle when he was shot. *See id.*

Further, the Commonwealth takes the position that, under Rule 542(E), hearsay evidence is *per se* admissible at a preliminary hearing and can be used to satisfy any and all elements of the prosecution's burden. The Commonwealth emphasizes that jurists who preside at preliminary hearings do not evaluate credibility, but rather, make a legal, sufficiency-based determination. *See* Brief for Appellee at 10 (citing, *inter alia*, *Liciaga v. Court of Common Pleas of Lehigh Cty.*, 523 Pa. 258, 263, 566 A.2d 246, 248 (1989)). As to *Verbonitz*, the Commonwealth regards the plurality decision as non-binding and poorly reasoned.

Finally, the Commonwealth asserts that the constitutional right of confrontation is a trial right that simply does not extend to a preliminary hearing. *See* Brief for Appellee at 13-14 (citing *Ritchie*, 480 U.S. at 52, 107 S. Ct. at 999 (plurality)). It also observes that hearsay evidence is routinely admitted to establish probable cause at preliminary hearings and grand jury proceedings in the federal courts, per Federal Rule of Evidence 1101(d)(3). *See generally* WAYNE R. LAFAVE, *ET AL.*, 4 CRIM. PROC. §14.4(b) (4th ed. 2016) (explaining that a potential majority of jurisdictions "start from the premise that the rules of evidence do not apply to the preliminary hearing").

### I. Hearsay Alone

Upon review, and as previously noted, I agree with the Commonwealth that the prosecution did not rely exclusively on hearsay in addressing the elements of the crimes with which Appellant was charged. Rather, the district attorney adduced live testimony from an investigating trooper: confirming from visual observation at the hospital that the

injured officer suffered from gunshot wounds; relating that the investigating trooper had observed Appellant in the hospital, who also had been shot; explaining that the trooper witnessed Appellant's statement that he had been in his garage holding the AK-47 assault rifle at the time of the shooting incident;[6] and attesting to the trooper's personal observation of an AK-47 near that garage. *See* N.T.*,* July 10, 2014, at 5-10. Significantly, as well, at the conclusion of the preliminary hearing, the defense conceded, as the direct proofs amply evidenced, that Appellant had shot the injured officer, while offering a justification defense. *See id.* at 45.

In delineating the elements of crimes, this Court distinguishes between the *actus reus* element and *mens rea.*[7] Very plainly, the Commonwealth adduced direct evidence establishing a *prima facie* case of one element, namely, the *actus reus*, of each of the three offenses in question – attempted murder, assault of a law enforcement officer, and aggravated assault. Accordingly, since the *prima facie* case was not advanced through

---

[6] Although Appellant's statement is hearsay under Pennsylvania law, *see* Pa.R.E. 803(25), it is not of a type that implicates a defendant's confrontation rights. *See generally United States v. Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006) (citing 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE §802.05[3][d] at 802–25 (2d ed. 2005), for the proposition that "a party cannot seriously claim that his or her own statement should be excluded because it was not made under oath or subject to cross-examination").

[7] *See, e.g.*, *Commonwealth v. Shaw*, 560 Pa. 296, 304, 744 A.2d 739, 743 (2000) (adopting a formulation from *Commonwealth v. Bolden*, 367 Pa. Super. 333, 532 A.2d 1172 (1987), in determining equivalency of in-state versus out-of-state offenses for purposes of sentencing, requiring courts to "identify the requisite elements of the crime – the actus reus and mens rea – which form the basis of liability"). *See generally* 21 AM. JUR. 2D CRIMINAL LAW §112 (2017) ("A crime generally consists of two elements, a physical, wrongful deed (the 'actus reus'), and a guilty mind that produces the act (the 'mens rea')."); *accord* Paul H. Robinson, 1 CRIM. L. DEF. §11 (2016) ("The elements of an offense are of two sorts: objective criteria (actus reus elements) and culpability requirements (including primarily mens rea elements)." (footnotes omitted)).

hearsay evidence alone, this case does not present a suitable vehicle for this Court to address the question of whether the Commonwealth may rely exclusively upon hearsay.[8]

## II. Confrontation

Regarding the right of confrontation, initially, I note that there are aspects of the Superior Court's opinion with which I do not agree. *See, e.g., supra* note 4. Primarily, I am concerned that the panel did not adequately address what it means to present a *prima facie* case in Pennsylvania and how this may contrast with the law in other jurisdictions expressly limiting the determination at preliminary hearings to probable cause. For example, in its discussion of the United States Supreme Court's *Gerstein* decision, the panel implied that the *prima facie* standard sets Pennsylvania apart from other jurisdictions, *Ricker*, 120 A.3d at 362, but the panel proceeded to cite exclusively to jurisdictions applying a pure probable cause standard in opining that its "conclusion

---

[8] In terms of *mens rea*, the investigating trooper further testified that substantial quantities of marijuana and a large cache of weapons were found in Appellant's residence, thus also tending to demonstrate a consciousness-of-guilt rationale motivating the shooting. Although this does not bear controlling relevance on the question of whether the Commonwealth proceeded with its overall case solely on the basis of hearsay, it is noteworthy that the Commonwealth did not proceed on such basis relative to *mens rea* elements either.

Self-evidently, I differ strongly with Justice Wecht's assertion that the uncontested evidence presented through Trooper Kelley's testimony that Appellant shot a law enforcement officer is somehow "tangential," "merely corroborat[ive]," or "surplusage." Dissenting Statement at 1-2 (Wecht, J.). The dissent references no authority that would suggest that direct evidence of crime elements presented by the Commonwealth at a preliminary hearing should be downplayed and subordinated in such a fashion.

[pertaining to Pennsylvania's *prima facie* standard] is consistent with a large body of other precedent." *Id.* n.8.[9]

Defining the *prima facie* standard is not without its complications, particularly given the varying expressions of this Court. Under the ordinary definition, presentation of a *prima facie* case entails "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Prima Facie Case,* BLACK'S LAW DICTIONARY (10th ed. 2014). Indeed, this Court has employed this formulation in various cases. *See, e.g.*, *Commonwealth v. Karetny*, 583 Pa. 514, 529, 880 A.2d 505, 514 (2005) (depicting the Commonwealth burden at a preliminary hearing as to adduce enough evidence such that, "if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury" (citing *Commonwealth v. Huggins*, 575 Pa. 395, 402, 836 A.2d 862, 866 (2003))). Nevertheless, the Court has also said that the "sole function" of the jurist presiding at a preliminary hearing is "to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint." *McBride*, 528 Pa. at 160, 595 A.2d at 592 (citing *Commonwealth v. Prado*, 481 Pa. 485, 489, 393 A.2d 8, 10 (1978)).[10]

---

[9] I have confirmed that none of the decisions from other jurisdictions cited in footnote 8 of the Superior Court's opinion applies a *prima facie* standard. Rather, they all apply the Fourth-Amendment-based probable cause standard.

[10] The frequently cited plurality decision in *Wojdak* appears to equate probable cause with proofs that "if presented at the trial in court, and accepted as true, the judge would be warranted in allowing the case to go to a jury." *Wojdak*, 502 Pa. at 368, 466 A.2d at 996 (emphasis omitted) (quoting *Commonwealth ex rel. Scolio v. Hess*, 149 Pa. Super. 371, 375, 27 A.2d 705, 707 (1942)). As explained by other courts, however, this classic formulation of a *prima facie* case differs materially from a conventional probable cause standard. *See, e.g.*, *Stewart v. Abraham*, 275 F.3d 220, 229-30 (3d Cir. 2001); *accord Gerstein*, 420 U.S. at 119-20, 95 S. Ct. at 866 (distinguishing probable cause hearings from those requiring *prima facie* proofs).

From some other of this Court's formulations, one might alternatively infer that the *prima facie* burden attaches only to the facet of the Commonwealth's obligation to prove that a crime has been committed, and that a separate probable cause standard pertains to demonstrating that the defendant was the perpetrator. *See, e.g.*, *Huggins*, 575 Pa. at 402, 836 A.2d at 866 ("A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense."). The Court has never explained, however, why any greater importance would attach to establishing abstract crime commission as compared to the defendant's participation, in terms of the salient Fourth Amendment interests involved.[11]

---

[11] Notably, moreover, the applicable Rules of Criminal Procedure do not distinguish between abstract crime commission and identity in terms of the applicable standard at preliminary hearings. *See, e.g.*, Pa.R.Crim.P. 542(D) ("At the preliminary hearing, the issuing authority shall determine from the evidence presented whether there is a *prima facie* case that (1) an offense has been committed and (2) the defendant has committed it."); *id.* 543(B) ("If the issuing authority finds that the Commonwealth has established a *prima facie* case that an offense has been committed and the defendant has committed it, the issuing authority shall hold the defendant for court on the offense(s) on which the Commonwealth has established a *prima facie* case.").

To the extent that some other jurisdiction had recognized a difference between identity and abstract crime commission, the modern trend has been to move away from such distinctions. *See, e.g.*, *Sheriff, Washoe Cty. v. Middleton*, 921 P.2d 282, 286 (Nev. 1996) ("[W]e now clarify that at the preliminary hearing stage, the state's burden with respect to the *corpus delicti* is the same as its burden to show probable cause. The state must present evidence supporting a 'reasonable inference' of death by criminal agency."); *State v. Jones ex rel. Cty. of Maricopa*, 6 P.3d 323, 329 (Ariz. Ct. App. 2000) ("Given that the purpose of the preliminary hearing is to determine whether probable cause exists to bind the defendant over to the superior court and that it is not a resolution of the merits of the charge(s), the justification for the *corpus delicti* rule is not pertinent.").

The Court, of course, must squarely resolve the ambiguity in terms of what is required of the Commonwealth before it can determine whether, or to what extent, the constitutional right of confrontation attaches. This is so, since the Supreme Court of the United States has indicated, essentially, that the closer in resemblance a pretrial procedure is to a trial, the more likely it is that trial rights will attach. *See Gerstein*, 420 U.S. at 122-23, 95 S. Ct. at 867-68. This consideration, however, is not sharply developed in the briefing, and the Court presently is deeply divided concerning the appropriate approach. For these reasons, I elect not the proceed further at the present with the Confrontation Clause analysis in this case, or the due process analysis which, as Appellant correctly explains, is closely related.[12]

When the Court does consider the issue of the Commonwealth's burden, either in a future case or through the rulemaking process, I share the concern of the Supreme Court of the United States with controlling the burden upon the criminal justice system imposed by pretrial hearings. *See Gerstein*, 420 U.S. at 122 & n.23, 95 S. Ct. at 867 & n.23. In this regard, I find it significant that the Supreme Court has indicated that states

---

[12] I do note that the United States Supreme Court has, on various occasions, warned against interference in matters of state criminal procedure under the auspices of the Due Process Clause. *See, e.g.*, *Medina v. California*, 505 U.S. 437, 443–44, 112 S. Ct. 2572, 2576 (1992) ("[I]t has never been thought that decisions under the Due Process Clause establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." (alterations, internal citations and quotation marks omitted)); *Patterson v. New York*, 432 U.S. 197, 201–02, 97 S. Ct. 2319, 2322 (1977) (cautioning that, "we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States" and explaining that "it is normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" (internal citations and quotation marks omitted)).

have some flexibility to experiment with the appropriate balance to be stricken. *See id.* at 123-24, 95 S. Ct. at 868. Accordingly, some balancing of the respective, vital interests of criminal defendants and the Commonwealth should be considered.[13] It must also be borne in mind that preliminary hearings in Pennsylvania do not implicate "the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands," *Gerstein*, 420 U.S. at 121, 95 S. Ct. at 867, a point which the Supreme Court found to be material in determining the degree of constitutionally required safeguards. *Accord McBride*, 528 Pa. at 157-58, 595 A.2d at 591 (emphasizing the preliminary hearings are not to be converted into guilt-based mini-trials).

Furthermore, contrary to Appellant's position, I wish to emphasize that the Commonwealth is not obliged to present particular witnesses or all of its witnesses, but rather, must merely establish a *prima facie* case.[14] Defendants, on the other hand, have a rule-based right to cross-examine the witnesses that the Commonwealth does present at preliminary hearings and to offer their own witnesses, subject, at least to some degree, to the presiding jurist's discretion and within reason. *See* Pa.R.Crim.P. 542(C). Of course, the defendant's core Fourth Amendment interests must be fully vindicated, per governing federal and state constitutional law.

---

[13] In this regard, the Commonwealth highlights that, per relatively recent amendments to the Pennsylvania Constitution, like criminal defendants, it enjoys a right to a jury trial. *See* PA. CONST., art. I, §6.

[14] Under Appellant's approach requiring the Commonwealth to present the eyewitnesses, a defendant could not be tried if they were unavailable. This certainly is not the law, as, for example, the Commonwealth may secure a criminal conviction based on circumstantial evidence. *See, e.g.*, *McBride*, 528 Pa. at 159 n.7, 595 A.2d at 592 n.7. So too may it prevail via the presentation of sufficient circumstantial evidence as a *prima facie* showing at a preliminary hearing.

Addressing the constitutional requirement of confrontation will also require a determination of the extent to which the rights to counsel and to cross-examination intersect. In this regard, it is noteworthy that several of the seminal decisions of the United States Supreme Court that are cited here involve the right to counsel. *See, e.g.*, *Coleman*, 399 U.S. 1, 90 S. Ct. 1999. However, the analytical framework and underlying justification for the two discrete Sixth Amendment rights differ substantially. The primary objective of the right to counsel is to guarantee "counsel's assistance whenever necessary to assure a meaningful 'defence[,]'" *United States v. Wade*, 388 U.S. 218, 225, 87 S. Ct. 1926, 1931 (1967), and, indeed, this right may attach as early as a pre-indictment lineup. *See Commonwealth v. Richman*, 458 Pa. 167, 172, 320 A.2d 351, 353 (1974). Conversely, the Confrontation Clause is a procedural guarantee preventing the "use of *ex parte* examinations as evidence against the accused," *Crawford v. Washington*, 541 U.S. 36, 50, 124 S. Ct. 1354, 1363 (2004),[15] and this right has repeatedly been characterized as "a trial right." *Ritchie*, 480 U.S. at 52, 107 S. Ct. at 999 ("The opinions of this Court show that the right to confrontation is a *trial* right[.]" (emphasis in original)). Notably, Appellant has referenced no cases treating these two rights conterminously.

Moreover, assuming, *arguendo*, that the Confrontation Clause is applicable in the preliminary hearing context, future advocacy should take into account its limited scope. In *Crawford*, the United States Supreme Court held that the constitutional right to confront a witness will only bar hearsay evidence that is "testimonial" in nature.

---

[15] *See also Mattox v. United States*, 156 U.S. 237, 242-43, 15 S. Ct. 337, 339 (1895) (explaining that one of the primary purposes of the Confrontation Clause is to force the accuser "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand . . . whether he is worthy of belief").

*Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364. Although the precise contours remain somewhat nebulous,[16] the Court has identified several categories of hearsay evidence that are nontestimonial and, thus, fall outside the protective realm of the clause, including, *inter alia*: statements obtained for the "primary purpose" of responding to an emergency;[17] statements made by a witness who the defendant intentionally rendered unavailable;[18] business and public records, provided that they were not created "for the purpose of establishing or proving some fact at trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539-40 (2009); "off-hand [or] overheard remark[s]," *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364; and "[s]tatements to friends and neighbors about abuse and intimidation," *Giles*, 554 U.S. at 376, 128 S. Ct.at 2692–93.

---

[16] *See, e.g., id.* at 51-52, 124 S. Ct. at 1364 (positing that the assessment may require focusing on differing aspects of the circumstances in which the statement was made, including the degree of formality, the declarant's objective belief as to the purpose for which the statement was taken, and the nature and extent of police involvement); *see also Michigan v. Bryant*, 562 U.S. 344, 367, 131 S. Ct. 1143, 1160 (2011) (suggesting that the "primary purpose of the interrogation" is the touchstone).

[17] *See Bryant*, 562 U.S. at 358, 131 S. Ct. at 1155*; see also Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273 (2006) ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency."). Notably, this principle has been interpreted rather broadly. *See Ohio v. Clark*, __ U.S. __ 135 S. Ct. 2173 (2015) (holding that a three-year-old boy's statements regarding the source of his injuries and identity of his abuser were not testimonial because the pre-school teacher and her supervisor obtained the statements in an effort to respond to an emergency).

[18] *See Giles v. California*, 554 U.S. 353, 361, 128 S. Ct. 2678, 2684 (2008) (holding that the Confrontation Clause will not preclude hearsay testimony if "defendant intended to prevent a witness from testifying")

To the degree that this Court is to provide meaningful guidance concerning the use of hearsay evidence vis-à-vis a defendant's interests, I believe that it is likely that we will also consider the character of the expected proffer in terms of focus, quality (or reliability), and/or quantity. The opinions in *Ceja*, 493 Pa. 588, 427 A.2d 631, arising out of the use of hearsay in administrative proceedings, provide salient expositions of relevant considerations. *See, e.g.*, *id.* at 594-612, 427 A.2d at 634-44. In the absence of such a review, I decline at this time to endorse bright-line authorization or disapproval.

### III. Rule 542(E) and Conclusion

Finally, and candidly, I recognize that the applicable rules are not models of clarity, as, for example, the directive to accept hearsay evidence in Rule 542(E) appears to clash with the rule-based right to cross-examine witnesses against the defendant conferred under Rule 542(C).[19] I also acknowledge that the hearsay-related

---

[19] That said, the amendatory hearsay references, being later in time and more specific, were plainly intended to control over the general authorization of cross-examination. Nevertheless, it is preferable for the rule to be adjusted to eliminate the facial incongruity. For example, and without endorsing the specific approach, the Arizona Rules of Criminal Procedure provide a more developed description of what is permitted and expected of the participants in a preliminary hearing, as follows:

> The preliminary hearing shall be held before a magistrate who shall admit only such evidence as is material to the question whether probable cause exists to hold the defendant for trial. All parties shall have the right to cross-examine the witnesses testifying personally against them, and to review their previous written statements prior to such cross-examination. At the close of the prosecution's case, including cross-examination of prosecution witnesses by the defendant, the magistrate shall determine and state for the record whether the prosecution's case establishes probable

(continued…)

amendments were not promulgated under ideal circumstances and that further reflection and refinement in the rulemaking arena is warranted.

From my perspective, the 2013 amendment to the rule (which expanded the range of express permission for the use of hearsay evidence beyond establishing elements requiring proof of ownership of, non-permitted use of, damage to, or value of property) was not intended to convey that the Commonwealth could meet its burden at a preliminary hearing entirely through hearsay evidence. Rather, I believe the revision served only as an attempt to clarify that the 2011 amendment to the rule had not restricted the Commonwealth's ability to adduce hearsay evidence at preliminary hearings solely to offense elements requiring proof of ownership, non-permitted use, damage, or value of property.[20] Given that there is no public deliberative history of the

_____

(…continued)

cause. The defendant may then make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The magistrate shall allow the defendant to present the offered evidence, unless the magistrate determines that it would be insufficient to rebut the finding of probable cause.

*Brailsford v. Foster*, 393 P.3d 138, 143 (Ariz. Ct. App. 2017) (quoting Ariz.R.Crim.P. 5.3).

[20] The 2011 amendment was publicly premised on an effort, spearheaded by several former Justices, to address criticisms of the Philadelphia criminal court system, including those about high dismissal rates due to the absence of fact witnesses at preliminary hearings. *See, e.g.*, Craig R. McCoy, Nancy Phillips & Dylan Purcell, *Justice: Delayed, Dismissed, Denied*, PHILA. INQUIRER (Dec. 13, 2009), http://www.philly.com/philly/news/special_packages/20091213_Justice__Delayed__Dis missed__Denied.html ("With Philadelphia's court system in disarray, cases crumble as witnesses fear reprisals . . .."); Tony Romeo, *Top Pa. Judges Seek to Streamline Philadelphia's Court Process*, (Oct. 18, 2010) http://philadelphia.cbslocal.com/2010/10/18/top-pa-judges-seek-to-streamline-philadelphias-court-process ("Two Pennsylvania State Supreme Court justices are lobbying for a change that would eliminate the practice of requiring certain Philadelphia (continued…)

amendment, the most I am able to say is that, in supporting the revision, I personally operated on the belief that the Court was not rejecting *Commonwealth ex rel. Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990) (plurality), but rather, was simply putting the attendant controversy aside for future consideration in the case law.

---

(…continued)
crime victims to testify at preliminary hearings."); Tom MacDonald, *Philadelphia Courts to Let Witnesses Skip Preliminary Hearings*, NEWSWORKS (Jan. 28, 2011), http://www.newsworks.org/index.php/local/item/12066-28tmcourt (reflecting a former Justice's comment that the 2011 rule amendment "will save literally thousands of victims from showing up at preliminary hearings from taking time off from their work, . . . [t]housands of victims of losing time from their homes").