**[J-78-2018] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| COMMONWEALTH OF PENNSYLVANIA, | : | No. 2 WAP 2018 |
|---|---|---|
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered May 26, |
| | : | 2017 at No. 633 WDA 2016, |
| v. | : | affirming the Order of the Court of |
| | : | Common Pleas of Erie County |
| | : | entered April 4, 2016 at No. CP-25- |
| DONALD J. MCCLELLAND, | : | CR-0003575-2015. |
| | : | |
| Appellant | : | ARGUED:  October 24, 2018 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  JULY 21, 2020**

For all of the reasons provided in my dissenting statement in *Commonwealth v. Ricker*, 170 A.3d 494 (Pa. 2017) (*per curiam*) (Wecht, J., dissenting), I join the Majority Opinion.

The Court is called upon to decide whether procedural due process protections preclude prosecutors from establishing a *prima facie* case at a preliminary hearing utilizing only hearsay testimony—evidence that would not be admissible at trial, and therefore is categorically incapable of demonstrating that the prosecution later will be able to prove the defendant's guilt beyond a reasonable doubt.  As it turns out, this is an elusive question.  In 1990, five members of this Court presumably thought the matter settled. *See Commonwealth ex rel. Buchanan v. Verbonitz*, 581 A.2d 172 (Pa. 1990).  But as time marched on, the five votes cast in favor of prohibiting this tactic were miscalculated and misconstrued, ostensibly relegating the case to non-binding status.  *See Commonwealth v. McClelland*, 165 A.3d 19, 24 n.4, 31 (Pa. Super. 2017); *Commonwealth v. Ricker*, 120 A.3d 349, 361 (Pa. Super. 2015), *appeal dismissed as improvidently granted*, 170 A.3d

494 (Pa. 2017). In my dissenting statement in *Ricker*, I objected to the Superior Court's "parched interpretation" of *Verbonitz*, and opposed that court's attempts to bury the precedent as a "valueless plurality." *Ricker*, 170 A.3d at 517 (Wecht, J., dissenting). Over my objection, this Court dismissed *Ricker* as improvidently granted, and resolution of this important question again escaped final review.

Today, the Court finally settles the matter. By restoring *Verbonitz* to precedential status, and by holding that a *prima facie* case premised exclusively upon hearsay offends our deeply rooted understanding of due process, we correct the wayward path that the law governing preliminary hearings has taken in recent years. I write separately to elaborate upon the role that the preliminary hearing plays in Pennsylvania's criminal justice system, and upon how today's decision should be implemented going forward.

A criminal case in Pennsylvania ordinarily commences when a police officer arrests a suspect and files a criminal complaint (and an accompanying affidavit of probable cause) with a magisterial district judge. See Pa.R.Crim.P. 503, 504. Typically, the prosecutor does not participate in either the investigation or the arrest of the suspect, and does not appear at the preliminary arraignment. That all changes at the preliminary hearing. *See id.* at 542(A)(1) ("The attorney for the Commonwealth may appear at a preliminary hearing and . . . assume charge of the prosecution."). At that hearing, "the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991) (citing *Commonwealth v. Prado*, 393 A.2d 8 (Pa. 1978)). To satisfy its burden—and to convince the magisterial district judge to bind the defendant over for trial—the Commonwealth must "present evidence with regard to each of the material elements of the charge and to establish

sufficient probable cause to warrant the belief that the accused committed the offense." *Id.* (citing *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983)).

The hearing itself is not a mere formality, nor is it a part of the process to be viewed as unimportant because the Commonwealth's evidentiary burden is a relatively light one. To the contrary, the preliminary hearing, although not constitutionally mandated, is a "critical stage" in the criminal justice process, *see* Maj. Op. at 28; *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970) (plurality), and plays a crucial part in maintaining the constitutional boundary between the government and the individual. "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." *McBride*, 595 A.2d at 591. "For all parties involved, it serves a core function, and it protects against unwarranted governmental intrusions upon a citizen's liberty." *Ricker*, 170 A.3d at 517 (Wecht, J., dissenting). The preliminary hearing is not a trial and does not require proof beyond a reasonable doubt, *McBride*, 595 A.2d at 591 (citing *Commonwealth v. Rick*, 366 A.2d 302 (Pa. Super. 1976) (*en banc*)), but it nonetheless serves a "vital role in our criminal justice system." *Ricker*, 170 A.3d at 517 (Wecht, J., dissenting). At the hearing, the "Commonwealth must appear before a neutral and detached magistrate and justify restraints of a person's liberty—restraints imposed by pretrial incarceration, by requiring a person to defend against criminal charges, or both." *Id.* at 509.

With such weighty interests at stake, it should go without saying that the result of a hearing so intertwined with one's liberty interests cannot rest exclusively upon evidence that is unreliable, inadmissible, and provides no assurances as to the future viability of a particular prosecution. The quality and reliability of hearsay evidence does not improve merely by introducing more hearsay statements, or by stacking them on top of each other.

It seems obvious then that it is insufficient to use nothing but hearsay as a mechanism to establish the factual predicates for a defendant's continued detention.

To hold otherwise would render this "critical stage" of the criminal process "illusory." *Ricker*, 170 A.3d at 517 (Wecht, J., dissenting). At such "an illusory proceeding, the interests, purposes, rights, and benefits of a preliminary hearing are denuded of substance or meaning." *Id.* As I explained previously:

> As a flexible concept, due process is necessarily incapable of precise definition. However, by any definition, principles of fundamental fairness and ordered liberty demand minimally that, when the law affords an individual a hearing, particularly one where restraint of a person's liberty interest is at issue, that hearing cannot be a functionless formality, nor entirely one-sided. Our Constitutions and our laws identify rights and interests that play an important role in the preliminary hearing. When the Commonwealth is permitted to circumvent each of those rights and interests by introducing only evidence that cannot be introduced at trial, and nothing more, that hearing falls well below the line that due process draws. Nothing about such a hearing satisfies "the community's sense of fair play and decency." [*United States v. Lovasco*, 431 U.S. 783, 790 (1977)].

> When the law affords a hearing to a person involved in our judicial system, particularly a hearing in which that person's liberty is at stake, the hearing must be more than a mere formality. In the words of Justice Benjamin Cardozo, "[t]he hearing, moreover, must be a reasonable one, not a sham or a pretense." *Palko v. State of Connecticut*, 302 U.S. 319, 327 (1937) (citations omitted) (*overruled by Benton v. Maryland*, 395 U.S. 784, 794 (1969) (holding that the Due Process Clause required incorporation of the Fifth Amendment's Double Jeopardy Clause to the states)).

*Id.* at 519-520 (parallel citations omitted).

Thus, it is readily apparent that no reasonable understanding of the preliminary hearing and of basic concepts of due process countenance an evidentiary demonstration premised on nothing but inadmissible hearsay. A more difficult question to answer is, if the *prima facie* case cannot be made by hearsay only, how much hearsay can be used? The answer to the question becomes clear after contemplation of the interests served by

the preliminary hearing for each of the three principal players: (1) the magisterial district judge; (2) the prosecutor; and (3) the charged defendant.

The magisterial district judge presides over the preliminary hearing and is responsible for a number of decisions critical to the progression of the criminal justice process in each individual case. The judge must listen to the evidence and decide whether the defendant should "be discharged," Pa.R.Crim.P. 542(A)(2), or whether the Commonwealth has established a *prima facie* case such that the defendant should be "bound over to court according to law," *id.* The magisterial district judge's decision to bind a case for trial is an authorization to the Commonwealth to continue to detain the defendant—either physically in jail or by compelling the defendant to appear for hearings and to stand for trial. The jurist presides over the hearing in order to "prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection." *Commonwealth ex rel. Maisenhelder v. Rundle*, 198 A.2d 565, 567 (Pa. 1964).

The evidentiary presentation, and the decision flowing from it, is a preview of what would be presented at an actual trial and is meant to convince the magisterial district judge that there is at least some evidence for all elements of the charged offenses, and that the charges and detention accordingly are warranted. The actual presentation informs the magisterial district judge's decision as to whether to hold all of the charges for trial, dismiss all of the charges, or dismiss some and hold others. The Commonwealth's evidence illuminates for the magisterial district judge the nature and severity of the crimes charged, the facts and circumstances underlying the arrest and the charges, and the role that the defendant played in the crimes. This body of information is material not just to the *prima facie* determination, but it also provides a foundation to modify, reduce, or increase the defendant's bail.

The use of inadmissible hearsay undermines each of these decisions. The more hearsay is relied upon at a preliminary hearing, the less "confidence can be ascribed to that decision. In principle, the justification for the Commonwealth's charges would be no different than if the prosecutor had looked up to the judicial officer and said 'trust me, we can prove this case later.'" *Ricker*, 170 A.3d at 519 (Wecht, J., dissenting). This is true when the Commonwealth relies upon any amount of hearsay to establish the material aspects of its *prima facie* case.

Evidence that the law deems unreliable *per se* naturally engenders unreliable results. Not only is the *prima facie* determination questionable when based upon hearsay; so, too, would be any collateral decisions that are made based upon such information, decisions such as bail modifications or issuances of "no contact" or "stay away" orders. Simply put, reliance upon hearsay undermines each and every aspect of the magisterial district judge's role at this "critical stage."

For the Commonwealth, the preliminary hearing often is the prosecutor's entry point into the process, and provides the prosecutor with the first substantive view of the evidence that police uncovered before charging the defendant. The hearing affords the Commonwealth an opportunity to speak to its witnesses for the first time before a neutral fact-finder, to present live testimony to enable evaluation of the strengths and weaknesses of the case, to add or withdraw charges as necessary, and to set the case on course for a trial on charges that are warranted by the facts. The Commonwealth can make its own initial credibility assessments, direct additional investigation or scientific testing of evidence, and contemplate future plea offers, all based upon the preview of the case that a reliable preliminary hearing provides.

Having such a solid understanding of the strengths and weaknesses of a case promotes efficiency in the process by prompting the Commonwealth to utilize its

resources to prosecute only the charges that are reasonably capable of being proven at trial. Knowing from the outset that a case would be difficult or impossible to prove, or that a case does not warrant the severity of the charges being pursued by the police initially, the prosecution may tailor the allocation of its resources prudently, perhaps by seeking to reach a plea agreement with the defendant, which, in turn, provides the corollary benefit (among others) of minimizing the amount of exposure the victim of crime has to the court system.

The Commonwealth can achieve none of this if the case relies upon the weak and unreliable foundation that hearsay lays. Hearsay can taint not only the initial perception of the strength of a case, but reliance upon the same might influence future prosecutorial decisions and arguments, heightening the possibility that a defendant could remain incarcerated longer than is necessary or justified, or that a victim will be forced to testify in cases that should have settled with plea bargains.

It nether diminishes nor harms any legitimate prosecutorial purpose to require the Commonwealth to meet its evidentiary burden with actual, admissible evidence. There is a valid concern that requiring live testimony to establish material elements of a *prima facie* case would increase victims' exposure to the criminal justice process. I do not discount this argument, nor do I in any way downplay the trauma that crime and the obligations attendant to a prosecution of that crime have on victims. But the Commonwealth's role is more than just advocating for one victim, or even for victims generally. The Commonwealth's greater obligation is to represent the people as a whole, and to stand for the interests of the state in prosecuting crimes. A prosecutor's job is "not merely to convict." *Commonwealth v. Clancy*, 192 A.3d 44, 52 (Pa. 2018) (quoting *Commonwealth v. Starks*, 387 A.2d 829, 831 (Pa. 1978)). The prosecutor is an "officer of the court," an "administrator of justice," and an "advocate." *Id.* In wearing each of these three hats, the

prosecutor's devotion is to the law, and the prosecutor simultaneously must "enforce the interests of the public" and "respect the rights of the defendant." *Id.*

At all times, "[t]he prosecutor must ensure that 'the defendant is accorded procedural justice and that [adjudications are] decided upon the basis of sufficient evidence.'" *Id.* at 52-53 (citing Pa.R.P.C. 3.8 cmt. 1; and MODEL RULES OF PROF'L CONDUCT 3.8 cmt. 1 (AM. BAR ASS'N 2015)) (brackets omitted). Adjudications predicated upon inadmissible evidence satisfy neither of these prosecutorial responsibilities. It does not matter that the evidentiary threshold is low, or that the preliminary hearing is not intended to be a full criminal trial. It is a proceeding that affects the substantive rights of an accused and implicates significant societal interests, and, once afforded as a matter of law, it cannot be cast aside as a mere formality. Hearsay is not sufficient evidence. Hearings based upon insufficient evidence fail to afford procedural justice. Prosecutors are duty-bound to satisfy lofty responsibilities. Allowing those ministers of justice to circumvent burdens using inadmissible evidence serves none of those responsibilities.

For the defendant, the preliminary hearing is a crucial proceeding. As I explained in *Ricker*:

> The preliminary hearing was not created for the purpose of serving as a trial preparation tool for the defense. This does not mean that no benefits necessarily and naturally accrue to the defendant in conducting the hearing according to its true purpose and within the confines of our Constitutions. A true preliminary hearing involves introduction by the Commonwealth of the minimum competent evidence to establish a *prima facie* case. In doing so, the Commonwealth opens its case to preliminary inspection and subjects its witnesses to basic cross-examination. Each is necessary to convince the presiding judicial officer that the Commonwealth's restraint upon the accused's liberty is warranted. . . . [T]his allows the accused and his counsel to probe the testimony, to make arguments against the charges or in favor of bail, and to preserve favorable testimony. It also serves as a limited discovery tool, which can inform decisions on whether to challenge the seizure of the accused or the acquisition of evidence in a suppression motion, and on what defense to pursue, if any. Moreover, the ability to

participate fully in a preliminary hearing can aid in focusing subsequent expenditures of limited investigative resources, something that is particularly beneficial to chronically (and unlawfully) underfunded public defender's offices. *See Kuren v. Luzerne Cty.*, 146 A.3d 715, 717 (Pa. 2016).

*Ricker*, 170 A.3d at 518 (some citations omitted).

Reliance upon hearsay to establish any of the material elements of a preliminary hearing would render "the right to counsel and the rule-based right to cross-examine witnesses . . . nothing more than hollow formalities, promises broken." *Id.* at 519.

> There would be no ability to test the Commonwealth's *prima facie* case, no witnesses to cross-examine, no testimony to preserve. Counsel would not be able to identify weaknesses in the Commonwealth's case or to identify possible defenses, as counsel would have no reason to be confident that the [hearsay] accurately or fully reflect[s] what the witness would say on the witness stand at trial. The right to counsel, and [the] concomitant rule-based right to cross-examine witnesses, would shrink to a right merely to have a warm body stand next to the accused, incapable of serving any real function on the accused's behalf.
>
> Additionally, the accused would be deprived of the other benefits that flow from participating in a preliminary hearing, such as obtaining a fair idea of the case against him or her and being able to allocate resources accordingly. At the same time, the Commonwealth would benefit from shielding its case and its witnesses from testing and examination, and would be permitted to proceed on little more than its assurance that it will produce competent evidence at some later date.

*Id.*

The introduction of some hearsay at a preliminary hearing is necessary, and traditionally has been permitted. Hence, I do not quibble with the introduction of hearsay to establish the value of real or personal property for grading purposes, to present scientific, technical, or forensic information, or to introduce laboratory reports. Otherwise, going forward, either in practice or mandated by our rules of procedure, hearsay should be eliminated from preliminary hearings as a substitute for eyewitness testimony, police testimony, or other testimony bearing upon the establishment of the material elements of

a *prima facie* case. Viewed as a sliding scale, the more hearsay that is allowed at preliminary hearings, the more the purposes and interests of the hearing are disserved. Consequently, subject to very limited exceptions, I discern no persuasive, let alone compelling, justification to allow the preliminary hearing to devolve into an unreliable formality.