**[J-78-2018][M.O. - Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 2 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellee | : | Court entered on 5/26/17 at No. 633 |
| | : | WDA 2016, affirming the order of the |
| | : | Court of Common Pleas of Erie County |
| v. | : | entered 4/4/16 at No. CP-25-CR- |
| | : | 0003575-2015 |
| | : | |
| DONALD J. MCCLELLAND, | : | |
| | : | |
| Appellant | : | ARGUED:  October 24, 2018 |

*CONCURRING AND DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                **DECIDED:  JULY 21, 2020**

I join the majority's analysis to the extent it reflects that a majority of Justices in *Buchanan v. Verbonitz*, 525 Pa. 413, 581 A.2d 172 (1990) (plurality), held that hearsay alone is insufficient to sustain the Commonwealth's burden of establishing a *prima facie* case at a preliminary hearing.  *Accord Commonwealth v. Ricker*, 642 Pa. 367, 375 & n.5, 170 A.3d 494, 499 & n.5 (2017) (Saylor, C.J., concurring).  I also agree that a majority of Justices advanced a due process rationale in *Verbontiz*.  *See* Majority Opinion, *slip op.* at 23.[1]

---

[1] Despite my position, above, I continue to reference the *Verbonitz* opinion as a plurality opinion.  This, of course, doesn't mean the opinion necessarily lacks a holding or any shared rationale.  *See, e.g.*, *Marks v. United States,* 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977) (stating that when "a fragmented Court decides a case and no single
(continued…)

As Justice Baer highlights, however, the *Verbonitz* due process rationale is severely lacking. *See* Dissenting Opinion, *slip op.* at 4-5, 10-11. In this regard, both the lead opinion and the concurrence rested the entire analysis upon an inapt analogy between final administrative adjudications of rights or interests and preliminary hearings in criminal cases, at which no such final adjudication occurs. *See id.* For this reason, I find that *Verbonitz* is so insufficiently reasoned that it fails to qualify for precedential treatment. *See generally Mayhugh v. Coon,* 460 Pa. 128, 135, 331 A.2d 452, 456 (1975) (discussing *stare decisis* and the applicable exceptions).

I do not believe, however, that this case presents a suitable vehicle to proceed further to address the due process issue, decoupled from *Verbonitz*'s faulty rationale. Of course, I certainly understand the dissent's approach of proceeding to do so, particularly in light of the substantial public importance and the difficulty the Court has had with identifying a suitable case. But I note that there is no advocacy on this subject from the criminal-defense side, given that Appellant has assiduously staked his position to *Verbonitz*. Accordingly, and since I differ with Appellant's contention that *Verbonitz* should control, I would simply affirm the order of the Superior Court.

Finally, the majority asserts, "that grave and doubtful constitutional concerns are evident is beyond peradventure." Majority Opinion, *slip op.* at 28 n.9. It is significant, however, to me at least, that such concerns proceed largely from the Court's decision to impose a burden on the Commonwealth beyond what is required by the federal and state constitutions, *i.e.,* the burden to establish a *prima facie* case as opposed to probable cause. *See generally Ricker*, 642 Pa. at 380-86, 170 A.3d at 502-06 (Saylor,

---

(…continued)
rationale explaining the result enjoys the assent of [the majority], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds'" (citation omitted)).

C.J., concurring) (discussing the uncertainties and difficulties flowing from the maintenance of this ostensibly higher, extra-constitutional standard).

I believe this Court should carefully consider whether this extra-constitutional measure of protection remains feasible in the modern era, particularly in light of the increased phenomenon of witness intimidation. As summarized in a United States Department of Justice publication:

> Citizens who witness or are victimized by crime are sometimes reluctant to report incidents to police or to assist in the prosecution of offenders. Such reluctance may be in response to a perceived or actual threat of retaliation by the offender or his or her associates, or may be the result of more generalized community norms that discourage residents from cooperating with police and prosecutors. In some communities, close ties between witnesses, offenders, and their families and friends may also deter witnesses from cooperating; these relationships can provide a vitally important context for understanding witness intimidation. Particularly in violent and gang-related crime, the same individual may, at different times, be a victim, a witness, and an offender. Historically, witness intimidation is most closely associated with organized crime and domestic violence, but has recently thwarted efforts to investigate and prosecute drug, gang, violent, and other types of crime.

*See generally* KELLY DEDEL, U.S. DEP'T OF JUSTICE, OFFICE OF COMMUNITY ORIENTED POLICING STRATEGIES, PROBLEM-ORIENTED GUIDES FOR POLICE PROBLEM-SPECIFIC GUIDES SERIES, WITNESS INTIMIDATION 2 (2006). Although empirical research may remain sparse, "small-scale studies and surveys of police and prosecutors suggest that witness intimidation is pervasive and increasing." *Id.* at 5.

In my view, the salutary effect of providing criminal defendants with an extra-constitutional layer of protection at preliminary hearings via the maintenance of the *prima facie* standard must be weighed against the burden imposed on the Commonwealth to repeatedly produce victims and other lay witnesses during multiple

phases of a criminal prosecution. In this balance, I find that serious consideration should be given to recalibrating preliminary hearings according to the constitutionally-prescribed requirement for the government to establish probable cause and leaving the conferral of any additional rights to the political branch, which is better situated to make broad-scale assessments of social policy.[2]

---

[2] Along these lines I note that the Criminal Procedural Rules Committee recently solicited public comment on a proposal that would replace the *prima facie* standard with a probable cause assessment. *See Supreme Court of Pa. Crim. Proc. R. Comm. Notice of Proposed Rulemaking, Proposed Amendments of Pa.Rs.Crim.P. 542, 543, and 1003*, 49 Pa. B. 197 (Jan. 12, 2019). That proposal, however, remains within the Committee's purview after having received comments from the public.