J-S16037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICK SMITH | : | No. 1911 EDA 2022 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered July 26, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0006184-2021

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:               **FILED OCTOBER 11, 2023**

The Commonwealth appeals from the order entered in the Philadelphia County Court of Common Pleas denying it permission to refile criminal charges against Patrick Smith (Appellee), a detective in the Philadelphia Police Department, for his participation in an alleged assault that occurred while he was off duty.  On appeal, the Commonwealth contends it presented sufficient evidence to establish a *prima facie* case that Appellee and his co-defendant[1]

_____

[1] Appellee's co-defendant was Philadelphia Police Inspector James Smith, who was also off duty at the time of the incident.  Appellee states in his brief that Inspector Smith is his brother.  **See** Appellee's Brief at 2.  The cases were heard together, and the trial court also dismissed the same charges filed against Inspector Smith.  The Commonwealth filed an identical appeal, which is docketed at 1910 EDA 2022 before this same panel.

committed simple assault, criminal conspiracy, and recklessly endangering another person (REAP).[2]  For the reasons below, we affirm.

The charges against Appellee arose from an incident that occurred during the late evening hours of August 18, or the early morning hours of August 19, 2020.  Appellee and his co-defendant were both charged with simple assault, criminal conspiracy and REAP.  A joint preliminary hearing was conducted on February 22, 2022, before Philadelphia Municipal Court Judge William Austin Meehan, Jr., where the following evidence was presented by the Commonwealth.

Complainant Paul McNally testified that, in the late evening hours of August 18 into the early morning hours of August 19, 2020, he was "taking a walk in the neighborhood" of Knights and Fairdale Road to "clear [his] mind" before a job interview scheduled for the next day.  N.T., 2/22/22, at 7.  McNally stated that he "was approached by a blue Mazda SUV" with two occupants whom he did not know.  *Id.* at 8.  The two occupants — one of whom he identified as Appellee's co-defendant[3] — "accused [him] of breaking into cars" and told him "they got [him] on video or something like that."  *Id.* at 9-10; *see also id.* at 16 (McNally stated the officers asked[,] "Are you the one breaking into cars?").  He stated the men "claimed to be part of Town

---

[2] *See* 18 Pa.C.S. §§ 2702(a)(1), 903(a), and 2705, respectfully.

[3] At the preliminary hearing, McNally could not identify Appellee as one of the men who purportedly assaulted him.  *See* N.T., 2/22/22, at 14.

- 2 -

Watch[.]" *Id.* at 21. At the hearing, McNally denied that he had been "looking in any vehicles" or lifting car door handles. *See id.* at 8, 15.

McNally claimed that he was nervous the men "were going to do something[,]" or possibly "abduct" him, so he ran away. N.T., 2/22/22, at 9, 17. He stated that as the men followed him, he called "his mother in a panic." *Id.* at 11. McNally testified that before he had the opportunity to call 911, the men "knocked [him] to the wall." *Id.* He elaborated: "They manhandled me and threw me to the wall." *Id.* at 12. *See also id.* at 20 ("[t]hey slammed me against the wall[;]" they "threw me against the pillar in the shopping center."). McNally testified that "the wall slammed the side of [his] head" and he sustained bleeding on the back of his head, a black eye and bruises on his legs and arms.[4] *Id.* at 11-12. He further stated that once he was on the ground, the two men "immobilized" him until uniformed police officers arrived. *See id.* at 21.

The following exchange occurred during co-defendant's counsel's cross-examination:

> [Co-Defendant's counsel:] So it's your testimony there were two individuals that caught up to you, not one?
>
> [McNally:] Yes.
>
> [Co-Defendant's counsel:] And you said they threw you up against the wall?

---

[4] McNally claimed that the day after the incident he "went to Urgent Care and got [his injuries] looked at." N.T., 2/22/22, at 22. He did not further elaborate on the extent of his injuries.

[McNally:] Yes.

[Co-Defendant's counsel:] To stop you from running; is that right?

[McNally:] Yes.

[Co-Defendant's counsel:] Because they were claiming you were looking into cars and trying car handles; is that right?

[McNally:] Yes. They – they assaulted me.

\* \* \*

[Co-Defendant's counsel:] You were trying to get away from them as they were trying to keep you there at that location; is that right?

[McNally:] Yes, that's correct.

N.T., 2/22/22, at 20-21.

After McNally's testimony, the Commonwealth called Internal Affairs Sergeant Zachary Koenig to the stand to testify that an off-duty action report was filed in response to the skirmish. *See* N.T., 2/22/22, at 23-27. Sergeant Koenig also confirmed that, at the time of the incident, co-defendant's job status was "[i]njured on duty[.]" *Id.* at 27. On cross-examination by co-defendant's counsel, Sergeant Koenig read the summary of the incident as recounted in the off-duty action report:

> On 8/19/20 at approximately 12:30 a.m. [Appellee] . . . along with Inspector James Smith, while off duty in the area of Knights and Fairdale Road, heard a person screaming. They observed a male looking into a vehicle and attempting the doors on both sides. Officers had prior knowledge of auto thefts and theft from autos in the immediate area.
>
> They followed the male and attempted to identify themselves, at which time the male ran and tripped. The male was stopped at the rear of the store at Knights and Fairdale Road.

[Appellee and Inspector Smith] called 911 and uniformed officers arrived on location. The male was investigated for ped[estrian] inves[tigation] at this time. The investigation continues into the auto thefts and thefts from autos in the area.

*Id.* at 28. Sergeant Koenig also confirmed that McNally was not charged with any crime and was not taken by police for medical treatment. *See id.* at 29-30.

Following the Commonwealth's case, co-defendant's counsel recalled McNally and played a video, marked as Exhibit D-1, which purportedly showed a person "trying car doors nine days before this incident." *See* N.T., 2/22/22, at 18-19, 35.[5] Co-defendant's counsel asked McNally if he "recognize[d him]self in [the] video[,]" to which McNally replied, "That is not me. I have not been in that neighborhood. I do not know where it is located. . . . That is not my voice." *Id.* at 35-36.

Following argument by counsel, the trial court discharged the matter for lack of evidence. The court stated:

[E]ven if I couldn't see that it was [McNally] in that video, what it does show is that there is that type of criminal activity going on in that neighborhood. So it certainly bolters the police officers' mental state that they were knowledgeable about the fact that there were car thefts in the area. And it was a legitimate reason to inquire of the individual.

Now, when he fled, you know, police are going to follow somebody when they flee. Just basic police actions. I don't see criminal culpability here at all. At best [what] you have is

---

[5] Co-defendant's counsel initially attempted to introduce the exhibit during cross-examination of McNally. *See* N.T., 2/22/22, at 18-19. However, at that time, the court concluded it was "irrelevant." *Id.* at 19. As noted above, the court permitted the video when counsel recalled McNally.

somebody not following police directives because [Appellee and co-defendant] were [off-duty] and they never should have reacted to this. But I don't find any criminal culpability whatsoever.

N.T., 2/22/22, at 45.

Less than a month later, the Commonwealth filed a Notice of Refiling of Criminal Complaint, requesting that the charges be reinstated and a preliminary hearing scheduled. **See** Commonwealth's Notice of Refiling of Criminal Complaint, 3/22/22. A joint refile hearing was conducted on July 26, 2022, before Philadelphia Court of Common Pleas Judge Crystal Bryant-Powell.[6]

At that hearing, the Commonwealth did not present any new evidence. Rather, it moved into evidence the notes of testimony from the February 22nd, 2022, preliminary hearing, as well as the exhibits introduced by the parties. **See** N.T., 7/26/22, at 5-7. Following argument, the trial court determined the Commonwealth did not meet its burden of proof and dismissed all charges

_____

[6] Pursuant to Pa.R.Crim.P. 544, "[w]hen charges are dismissed [at] a preliminary hearing, . . . the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed . . . the charges." Pa.R.Crim.P. 544(A). Subsection (B) allows the Commonwealth to file a motion requesting "a different issuing authority to conduct the preliminary hearing." Pa.R.Crim.P. 544(B). Although it does not appear the Commonwealth formally requested that a "different issuing authority" conduct the refile hearing in the present case, that is what occurred. **See id.** "Nevertheless, neither party has objected to the procedure." **Commonwealth v. Sinkiewicz**, 293 A.3d 681, 686 n.4 (Pa. Super. 2023). Furthermore, we note that "this case retained its municipal court docket number" despite the fact that the refile hearing was conducted in the Court of Common Pleas. **See Commonwealth v. Montgomery**, 192 A.3d 1198, 1199 n.2 (Pa. Super. 2018).

against Appellee and co-defendant. ***See id.*** at 27. This timely Commonwealth appeal follows.[7]

The Commonwealth presents one issue for our review:

Did the Commonwealth present a *prima facie* case for charges of simple assault, conspiracy, and [REAP] when the victim testified that [Appellee] and co[-]defendant baselessly accused him of breaking into cars, chased after him, rammed him into a wall, and held him down until officers arrived?

Commonwealth's Brief at 8.

Preliminarily, we must consider whether we have jurisdiction over this appeal. Because "jurisdiction is purely a question of law[, our] standard of review is *de novo*, and the scope of review is plenary." ***Commonwealth v. Merced***, 265 A.3d 786, 789 (Pa. Super. 2021) (citation omitted).

Generally, when, as here,

criminal charges are dismissed prior to trial, the Commonwealth can simply refile the charges and, therefore, an appeal from such an order is **interlocutory**. [U]nder Pennsylvania Rule of Appellate Procedure 311(d), in criminal cases the Commonwealth has a right to appeal an interlocutory order **if the Commonwealth certifies that the order will terminate or substantially handicap the prosecution**. . . .

***Commonwealth v. Holston***, 211 A.3d 1264, 1268 (Pa. Super. 2019) (*en banc*) (citations omitted & emphases added). In the present case, the Commonwealth did **not** certify in its notice of appeal that the order "will

---

[7] The Commonwealth complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

terminate or substantially handicap the prosecution." **See** Pa.R.Crim.P. 311(d); Commonwealth's Notice of Appeal, 7/9/21.

This Court has determined, however, that an order dismissing charges is final and appealable when "the defect which requires the dismissal of [the] charges is uncurable[,]" such as when "the statute of limitations expired before the trial court dismissed the charge at issue[;]" in that circumstance, "the Commonwealth cannot refile the charges[.]" **Commonwealth v. Ligon**, 219 A.3d 1181, 1185 (Pa. Super. 2019) (*en banc*) (citation omitted). **See** Pa.R.A.P. 341(a)-(b) ("[A]n appeal may be taken as of right from any final order[,]" such as an order that "disposes of all claims and of all parties[.]"). In the present case, the incident occurred, at the latest, on August 19, 2020, and the two-year statute of limitations would have expired on August 19, 2022. **See** 42 Pa.C.S. § 5552(a) ("Except as otherwise provided . . . , a prosecution for an offense must be commenced within two years after it is committed."). Therefore, the statute of limitations had not yet expired when the common pleas court dismissed the charges on July 26, 2022.

Nevertheless, we conclude the order *sub judice* is a final order based on the unique structure of the Philadelphia County court system, which includes Philadelphia Municipal Court. The Philadelphia Municipal Court has original jurisdiction over adult criminal offenses "for which no prison term may be imposed or which are punishable by imprisonment for a term of not more than five years[.]" 42 Pa.C.S. § 1123(a)(2). This includes the offenses charged in the present matter — simple assault, conspiracy, and REAP — which are all

graded as second-degree misdemeanors. *See* 18 Pa.C.S. §§ 905(a), 2701(b), 2705; *see also* 18 Pa.C.S. § 1104(2) (maximum sentence for second-degree misdemeanor is two years' imprisonment). However, Pennsylvania Rule of Criminal Procedure 1001 permits the Commonwealth to file a "written certification to exercise [its] right to a jury trial in a Municipal Court case." Pa.R.Crim.P. 1001(D). When it does, the Rule requires the President Judge of the Municipal Court to promptly "schedule a preliminary hearing." *Id.* Thereafter, "[w]hen [the] case is held for court the case shall remain in the Common Pleas Court through final disposition." *Id.* The Comment to the Rule emphasizes that "[o]nce a case is bound over to Common Pleas Court, the trial judge may not remand the case to the Municipal Court for any reason, even if the right to jury trial is waived." *See* Pa.R.Crim.P. 1001, Cmt.

In the present case, the Commonwealth exercised its right to a jury trial by filing a written certification on April 5, 2021. *See* Commonwealth's Certification of [Its] Exercise of Right to a Jury Trial, 4/5/21. The Municipal Court President Judge then directed that the matter "be promptly listed for a preliminary hearing[.]" *See* Order, 5/3/21. As noted *supra*, Municipal Court Judge Meehan conducted a preliminary hearing on February 22, 2022, and discharged the matter for lack of evidence. *See* N.T., 2/22/22, at 45.

On March 22, 2022, the Commonwealth filed a notice of its intent to refile the criminal complaint in the Court of Common Pleas. The matter proceeded to a hearing before Common Pleas Court Judge Bryant-Powell, who agreed that the Commonwealth did not establish a *prima facie* case for any of

the offenses and, again, dismissed the charges. **See** N.T., 7/26/22, at 27. At that point, both a Municipal Court judge and a Common Pleas Court judge had concluded the Commonwealth failed to meet its preliminary burden of proof in order to establish a *prima facie* case. As the matter was removed to the Common Pleas Court *via* the Commonwealth's request for a jury trial, the Commonwealth's only option would have been to seek to refile the charges before another Common Pleas Court judge. However, pursuant to the "coordinate jurisdiction rule, . . . judges of coordinate jurisdiction should not overrule each other's decisions." **Commonwealth v. King**, 836 A.2d 25, 29 (Pa. 2003) (citation omitted). While the courts of this Commonwealth have permitted a departure from this rule in exceptional circumstances, none are applicable here. **See Commonwealth v. Starr**, 664 A.2d 1326, 1332 (Pa. 1995) (permitting departure from coordinate jurisdiction rule in "exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed").

Accordingly, we conclude that, based on the jurisdictional constraints of the Philadelphia County court system, the order at issue was final and appealable. Thus, the Commonwealth was not required to include a Pa.R.A.P. 311(d) certification in its notice of appeal.

Turning to the Commonwealth's substantive claim, we review an order dismissing criminal charges at a preliminary hearing for lack of evidence under the following standards:

> [A] *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense.  Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury.  A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint. *. . .* The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.
>
> [I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.  The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established.  The "more-likely-than-not" test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability.  The more-likely-than-not test is the minimum standard — anything less rises no higher than suspicion or conjecture.

***Commonwealth v. Perez***, 249 A.3d 1092, 1102-03 (Pa. 2021) (citations & some quotation marks omitted).

As noted, ***supra***, the Commonwealth seeks to prosecute Appellee on charges of simple assault, conspiracy, and REAP.  A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]"  18 Pa.C.S. § 2701(a)(1).  Bodily injury is

defined as "[i]mpairment of [a] physical condition or substantial pain." 18 Pa.C.S. § 2301. Even if the victim does not sustain bodily injury, a person may be found guilty of simple assault if he acted with "a specific intent to cause bodily injury[.]" ***Commonwealth v. Richardson***, 636 A.2d 1195, 1196 (Pa. Super. 1994) (citation omitted). A person is guilty of criminal conspiracy if he: "(1) entered into an agreement to commit . . . an unlawful act with another person . . . , (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Fisher***, 80 A.3d 1186, 1190–91 (Pa. 2013) (citation omitted). ***See*** 18 Pa.C.S. § 903(a)(1). Lastly, a person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. ***See*** 18 Pa.C.S. § 2301 (defining "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").

On appeal, the Commonwealth insists that it presented sufficient evidence to establish a *prima facie* case for each offense charged. ***See*** Commonwealth's Brief at 12. First, with regard to simple assault, the Commonwealth claims McNally's testimony that Appellee and his co-defendant "manhandled [him] and threw [him] to the wall" — which resulted in bleeding on the back of his head, a black eye, and bruising — was sufficient to establish the offense. ***See id.*** at 13 (record citation omitted). Although the trial court apparently determined Appellee's actions constituted "a lawful use of force"

based on the fact that "he allegedly saw [McNally] looking into cars and pulling on their doors[,]" the Commonwealth maintains this was an improper "credibility finding" that should not have been considered at the preliminary hearing. *Id.* at 14 (record citation omitted). Rather, it asserts "[t]he question of whether or not [Appellee] is ultimately able to persuade a fact finder at trial that he was legitimately using reasonable force must await . . . trial." *Id.*

Next, with regard to the conspiracy charge, the Commonwealth argues McNally's testimony that Appellee and his co-defendant together confronted him, chased him, "rammed him into a wall and held him down until uniformed officers arrived[,]" was sufficient to establish a *prima facie* case of conspiracy. Commonwealth's Brief at 15. It claims that an agreement between the co-defendants to assault McNally "may be inferred from the relation and conduct of the parties," and need not have been "expressly communicated[.]" *Id.*

Lastly, the Commonwealth contends it presented sufficient evidence to support a *prima facie* case of REAP because "the two men chased McNally and together used that momentum to ram his head into a wall." Commonwealth's Brief at 16 (record citation omitted). It insists that this act "demonstrated a reckless disregard for a substantial and unjustifiable risk of seriously injuring McNally[,]" and that repeated blows to the head — a vital part of the body — provide a "common-sense inference" of an intent to inflict serious bodily injury. *Id.*

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we conclude the trial court applied the proper standard

of review and did not err in finding the Commonwealth failed to present a *prima facie* case to support the charges filed against Appellee.

Considering first the offense of simple assault, we conclude the Commonwealth failed to establish Appellee acted with the requisite *mens rea* to support the charge. Assuming, *arguendo*, that McNally suffered bodily injury,[8] the Commonwealth was still required to demonstrate that Appellee acted intentionally, knowingly, or recklessly to cause that bodily injury. **See**

_____

[8] This Court has held that a victim sustained bodily injury in the following circumstances: (1) the defendant threw the victim against a wall and punched the victim in the mouth, which cause the victim's head to hit the wall, resulting in a "busted lip" and pain; (2) the defendant struck the victim with a closed fist in the jaw resulting in "slight swelling and pain[;]" and (3) the defendant grabbed the victim's arm in an aggressive fashion and pushed the victim against a wall, resulting in bruises that lasted several days. **See Commonwealth v. Wroten**, 257 A.3d 734, 744 (Pa. Super. 2021); **Commonwealth v. Marti**, 779 A.2d 1177, 1181 (Pa. Super. 2001); **In re M.E.**, 758 A.2d 1249, 1252 (Pa. Super. 2000).

Here, viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, we conclude that McNally's testimony — that "the wall slammed the side of [his] head[,]" resulting in bleeding, a black eye and bruises — if credited by the fact finder, was sufficient to establish he suffered "bodily injury," and in particular "substantial pain," as a result of the incident. **See Perez**, 249 A.3d at 1102-03; 18 Pa.C.S. § 2301; N.T., 2/22/22, at 11.

Moreover, we note that if we concluded the evidence was **insufficient** to establish bodily injury, the Commonwealth would be required to establish Appellee **attempted** to cause bodily injury. **See** 18 Pa.C.S. § 2701(a)(1). In order to demonstrate an attempted simple assault, the Commonwealth must show Appellee acted with "specific intent to cause [McNally] bodily injury[.]" **See Richardson**, 636 A.2d at 1196 (citation omitted). As we discuss **infra**, the evidence does not support an inference that Appellee acted with the requisite specific intent.

18 Pa.C.S. § 2701(a)(1). A person acts "intentionally" when "it is his conscious object . . . to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). A person acts "knowingly" when "he is aware that it is practically certain that his conduct will cause such a result." *Id.* at § 302(b)(2)(ii). Finally,

> [a] person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk that the material element . . . will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

Here, the Commonwealth insists the fact that McNally testified Appellee and co-defendant "manhandled [him] and threw [him] to the wall" was sufficient to establish a *prima facie* case of simple assault. **See** Commonwealth's Brief at 13 (record citation omitted). However, McNally's testimony does not support a reasonable inference that Appellee intended to cause him to suffer bodily injury, or that he acted knowingly or recklessly to cause that result.

Although McNally claimed he was **not** looking in cars on the night in question, he acknowledged that Appellee stopped to question him because that is what Appellee believed he was doing. McNally admitted that after Appellee and co-defendant approached him, they "accused [him] of breaking into cars[,]" and "said they [had him] on video[.]" N.T., 2/22/22, at 9-10. **See also id.** at 16 ("They told me, Are you the one breaking into cars? And I was like, What are you talking about?"). He also testified that Appellee and

- 15 -

co-defendant "claimed to be part of Town Watch[.]" *Id.* at 21. However, instead of engaging in further conversation, McNally ran. *See id.* at 10, 16. He stated that when Appellee and co-defendant caught up to him, they "threw" him against a wall or a pillar and held him on the ground until uniformed officers arrived. *See id.* at 12, 20-21. Importantly, he conceded that they did so "[t]o stop [him] from running" because they "claim[ed he was] looking into cars and trying car handles." *Id.* at 20.

Thus, viewing the evidence in the light most favorable to the Commonwealth, we conclude McNally's testimony does not support a reasonable inference that Appellee "more likely than not" **intended** to cause him bodily harm. *See Perez*, 249 A.3d at 1103. Rather, McNally's own testimony confirms Appellee's intent was to stop him from fleeing and confront him about the recent car break-ins, regardless of whether Appellee's suspicions were justified. Neither Appellee's actions, nor his statements, compel a different result. *See Commonwealth v. Predmore*, 199 A.3d 925, 932-33 (Pa. Super. 2018) (en banc) (Commonwealth did not establish *prima facie* case of attempted murder when defendant shot victim in the calves following an argument; no intent to kill could be inferred from shooting in lower leg and Commonwealth presented no evidence that defendant "verbally indicated, directly or indirectly, his intent to kill" victim). Furthermore, a reasonable inference that Appellee did not intend to injure McNally is supported by the summary of the incident recorded in the Internal Affairs' off-duty action report, as well as the fact that Appellee and co-defendant

requested dispatch to send uniformed officers to the scene. ***See*** N.T., 2/22/22, at 28 (off-duty report indicated officers observed male looking in vehicle, had knowledge to auto thefts in immediate area, and followed male while attempting to identify themselves; "[o]fficers called 911" after stopping male).[9]

We further conclude that the Commonwealth also failed to establish Appellee acted knowingly or recklessly, *i.e.*, that he took actions which he was "practically certain" would result in McNally suffering bodily injury or that he "consciously disregard[ed] a substantial and unjustifiable risk" that such injury would result from his conduct. ***See*** 18 Pa.C.S. § 302(b)(2)(ii), (3). Indeed, McNally's testimony supports a reasonable inference that Appellee knocked him into a wall to stop him from fleeing; there was no testimony that Appellee or co-defendant hit, kicked, or otherwise attempted to harm McNally after he was subdued. Nor does the Commonwealth present such an argument in its brief.[10] Rather, the Commonwealth focuses on the trial court's purported

---

[9] We emphasize that in making this determination, we do **not** consider whether Appellee's actions would constitute a "lawful use of force" by a police officer. ***See*** Commonwealth's Brief at 14. We agree with the Commonwealth that our consideration of a potential defense would require a credibility determination, which is not permitted at the preliminary hearing stage. ***See*** ***Perez***, 249 A.3d at 1102.

[10] In its reply brief, the Commonwealth argues, for the first time, that Appellee's purported subjective intent to detain McNally "is irrelevant to whether he also intended, knew, or was reckless to the fact that throwing someone head-first into a wall would cause bodily injury." ***See*** Commonwealth's Reply Brief at 9-10 n.1. However, the Commonwealth's
*(Footnote Continued Next Page)*

determination that Appellee's actions constituted a "lawful use of force." **See** Commonwealth's Brief at 14. As explained **supra**, we need not consider this defense to affirm the court's ruling.

With regard to conspiracy, the Commonwealth failed to present any evidence, direct or circumstantial, to support a reasonable inference that Appellee and co-defendant acted with a "shared criminal intent" to assault McNally. **See Fisher**, 80 A.3d at 1190. As explained above, the only reasonable inference from the Commonwealth's evidence was that Appellee and co-defendant intended to stop McNally from fleeing the area and question him about the recent car thefts.

Lastly, we conclude the Commonwealth failed to establish a *prima facie* case of REAP. There was simply no evidence presented to support a reasonable inference that Appellee engaged in conduct that placed McNally "in danger of death or serious bodily injury." **See** 18 Pa.C.S. § 2705. Although the Commonwealth emphasizes that repeated blows to a person's head can support an inference that the actor "inten[ded] to inflict serious bodily injury[,]" that was not what occurred in the present case. **See** Commonwealth's Brief at 16. Nor, as the Commonwealth suggests, did McNally testify that Appellee and co-defendant "used [their] momentum" from

---

characterization of Appellee's actions is belied by the record. The only reasonable inference that may be drawn from McNally's testimony is that Appellee pushed him or threw him into a wall, where he hit his head. **See** N.T., 2/22/22, at 11-12, 20. He never testified that they "threw him head-first into a wall[.]" **See** Commonwealth's Reply Brief at 9.

the chase to "ram his head into a wall." **Id.** Instead, McNally testified that the men "knocked" or "threw" him into the wall, where he "slammed the side of [his] head." N.T., 2/22/22, at 11-12. There is simply no testimony to support an inference that Appellee repeatedly hit McNally in the head, or purposely smashed McNally's head into the wall.

Accordingly, we agree with the trial court's determination that the Commonwealth failed to present sufficient evidence to support a *prima facie* case of simple assault, conspiracy, and/or REAP against Appellee. Therefore, we affirm the order dismissing the charges.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: October 11, 2023